**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| MELANIE RADY, individually and on behalf of all others similarly situated,<br><br>             Plaintiff,<br><br>    v.<br><br>PANAMERICAN CONSULTING, LLC,<br><br>             Defendant. | Case No.: 1:23-cv-15170 |

## DEFENDANT'S ANSWER TO PLAINTIFF'S CLASS ACTION COMPLAINT

Defendant, PANAMERICAN CONSULTING, LLC, by and through its attorneys Sean G. Rohan and Russell J. Brown of O'HAGAN MEYER LLC, and for its Answer to Plaintiff's Class Action Complaint states as follows:

## NATURE OF THE CASE

1. Defendant Panamerican Consulting, LLC ("PCLLC") is a debt settlement provider that operates nationally and in the state of Illinois. However, Defendant does not practice law in the State of Illinois and does not employ attorneys that are permitted to, and regularly do, practice law in the State of Illinois.

**ANSWER:** **Defendant denies that it is a debt settlement provider. Defendant admits only that it operates nationally and in the state of Illinois, and that it does not practice law nor employ attorneys.**

2. Defendant targets consumers who are in significant debt with promises to improve their financial situation, and credit outlook. These consumers, like Plaintiff, are especially vulnerable: relentless collection letters, calls, and even lawsuits can, and do, drive them to seek an escape valve for their financial issues. Debt settlement providers, like Defendant, make enticing

promises to consumers in debt, claiming that they can significantly lower their payments and help them resolve their debt problems, once and for all.

**ANSWER:    Defendant denies the allegations in Paragraph 2.**

3.      However, these promises are often broken, leaving the consumer deeper in debt and in a much worse place than where they started.  As a result, the State of Illinois enacted the Debt Settlement Consumer Protection Act, 225 ILCS 419 et seq. to regulate debt settlement companies in Illinois. The Consumer Fraud Act also more broadly regulates businesses as they relate to consumers.

**ANSWER:    Defendant denies the allegations in Paragraph 3 addressed to Defendant's alleged actions and the alleged consequences of said actions. The Illinois Debt Settlement Consumer Protection Act and Consumer Fraud Act are legal instruments which speak for themselves.**

4.      The DSCPA was enacted in 2010 to regulate debt settlement companies and include much needed consumer protections.

**ANSWER:    The DSCPA is a legal instrument which speaks for itself. Defendant denies the remaining allegations in Paragraph 4 as legal conclusions.**

5.      The DSCPA includes requirements that debt settlement companies that choose to operate in Illinois become licensed in this state and abide by certain required provisions, such as a 15% cap on payment for settled debt. This act also prohibits certain false and deceptive communications by debt settlement providers, for example, prohibiting debt settlement companies as well as requiring certain disclosures to ensure that consumers are fully informed of the risks of hiring a debt settlement company.

**ANSWER:** **The DSCPA is a legal instrument which speaks for itself. Defendant denies the remaining allegations in Paragraph 5 as legal conclusions.**

6. Violations of the Debt settlement consumer protection act are violations of the Illinois Consumer Fraud and Deceptive Business Practices Act. ICFA, 815 ILCS 505/2. ("Violations of the Debt Settlement Consumer Protection Act. Any person who violates the Debt Settlement Consumer Protection Act commits an unlawful practice within the meaning of this Act.").

**ANSWER:** **The Illinois Consumer Fraud and Deceptive Business Practices Act is a legal instrument which speaks for itself. Defendant denies the remaining allegations in Paragraph 6 as legal conclusions.**

7. The rules governing debt settlement companies are clear, yet Defendant has violated numerous provisions of the DSCPA and ICFA, causing significant harm to Plaintiff and members of the putative class.

**ANSWER:** **The DSCPA and ICFA are legal instruments which speak for themselves. Defendant denies that this case merits class treatment and further denies the remaining allegations in Paragraph 7 as legal conclusions.**

8. In response to abuses by credit repair companies, Congress enacted the Credit Repair Organizations Act ("CROA") in 1996, as an amendment to the Consumer Protection Act ("CPA"). 15 U.S.C. §1679 et seq.

**ANSWER:** **The Credit Repair Organizations Act and Consumer Protection Act are legal instruments which speak for themselves. Defendant denies the remaining allegations in Paragraph 8 as legal conclusions.**

9.     Congress did so against the backdrop of express findings that consumers have a vital interest in establishing and maintaining their credit worthiness and credit standing; that in order to obtain and use credit consumers who have experienced credit problems may seek assistance from credit repair organizations which offer to improve the credit standing of such consumers; and, that certain advertising and business practices of companies engaged in the character of business that Defendant operates have worked a financial hardship upon consumers particularly those of limited economic means and who are inexperienced in credit matters. 15 U.S.C. § 1679(a).

**ANSWER:     Defendant denies the allegations in Paragraph 9 as legal conclusions.**

10.     The CROA, which became effective on April 1, 1997, was enacted to improve the policing of companies associated with services offered to aid in credit repair by ensuring that consumers seeking to utilize such services are provided additional disclosures and other protections against deceptive business practices. *See* 15 U.S.C. § 1679(b).

**ANSWER:     The CROA is a legal instrument which speaks for itself. Defendant denies the remaining allegations in Paragraph 10 as legal conclusions.**

## JURISDICTION AND VENUE

11.     Jurisdiction over Defendant is proper under 735 ILCS 5/2-209(a)(l) (transaction of any business within this State), section 2-209(a)(7) (the making or performance of any contract or promise substantially connected with this State), section 2-209(b)(4) (corporation doing business within this State), and section 2-209(c) (any other basis now or hereafter permitted by the Illinois Constitution and the Constitution of the United States

4

**ANSWER: Defendant denies the allegations in Paragraph 11 as conclusions of law to which no response is necessary. However, in the event a response is required, Defendant admits that jurisdiction was proper in Illinois state court.**

12.     Jurisdiction over Defendant is proper under 735 ILCS 5/2-209(a)(1) (transaction of any business within this State), section 2-209(b)(4) (corporation doing business within this State), and section 2-209(c) (any other basis now or hereafter permitted by the Illinois Constitution and the Constitution of the United States).

**ANSWER: Defendant denies the allegations in Paragraph 12 as conclusions of law to which no response is necessary. However, in the event a response is required, Defendant admits that jurisdiction was proper in Illinois state court.**

13.     Pursuant to General Order No. 1.2 of the Circuit Court of Cook County, this action is properly before the Chancery Division of the County Department because it is a Class Action.

**ANSWER: Defendant denies the allegations in Paragraph 13 as conclusions of law to which no response is necessary. However, in the event a response is required, Defendant admits that the case was properly before the Chancery Division of the Circuit Court of Cook County.**

**PARTIES**

14.     14. Plaintiff, Melanie Rady ("Plaintiff" or "Ms. Rady") is a resident and citizen of the state of Illinois.

**ANSWER: Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 14 and demands strict proof thereof.**

15.     Plaintiff purchased and contracted for the purchase of "debt settlement services" with PCLLC as that term is defined in DSCPA, 225 ILCS 429/10.

**ANSWER:** **Defendant denies the allegations in Paragraph 15 as legal conclusions and further denies that it provides debt settlement services.**

16.     Plaintiff is a consumer as that term is defined in DSCPA, 225 ILCS 429/10, ICFA, 815 ILCS 505/1(e) and CROA, 15 U.S.C. § 1679(a)(1).

**ANSWER:** **Defendant denies the allegations in Paragraph 16 as legal conclusions.**

17.     Plaintiff is also a person as that term is defined in ICFA, 815 ILCS 505/1(c).

**ANSWER:** **Defendant denies the allegations in Paragraph 17 as legal conclusions.**

18.     Defendant Panamerican Consulting, LLC ("PCLLC") is a California based debt settlement and credit repair company.

**ANSWER:** **Defendant admits only that Panamerican Consulting, LLC is based in California. Defendant denies the remaining allegations in Paragraph 18.**

19.     Defendant's primary place of business is 3843 S. Bristol Street, #308, Santa Ana, California 92704.

**ANSWER:** **Defendant admits the allegations in Paragraph 19.**

20.     Defendant uses instruments of interstate commerce including the mails to sell, provide, or perform services, in return for the payment of money or other valuable consideration, for the express or implied purpose of engaging in consumers to provide alleged "debt settlement" services.

**ANSWER:** **Defendant denies the allegations in Paragraph 20.**

21.     Defendant solicited business from consumers throughout the United States, including Illinois.

**ANSWER:** **Defendant admits the allegations in Paragraph 21 but denies that such business constituted debt settlement services.**

22.     Defendant engaged in the business of providing debt settlement services in exchange for fees or compensation and are therefore "debt settlement providers" as that term is defined at 225 ILCS 429/10.

**ANSWER:     Defendant denies the allegations in Paragraph 22.**

23.     Defendant conducted its debt settlement services in the state of Illinois and many other states.

**ANSWER:     Defendant denies the allegations in Paragraph 23.**

24.     Defendant PCLLC uses instruments of interstate commerce including the mails and wires to sell, provide, or perform services, in return for the payment of money or other valuable consideration, for the express or implied purpose of improving any consumer's credit record, credit history, or credit rating, and is therefore a "credit repair organization" as that term is defined at 15 U.S.C.A. § 1679a(3).

**ANSWER:     Defendant denies the allegations in Paragraph 24.**

## FACTUAL ALLEGATIONS

25.     Plaintiff was having trouble paying certain bills and received solicitations from Defendant, or an agent working on behalf of Defendant, advertising debt settlement services.

**ANSWER:     Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 25 and demands strict proof thereof.**

26.     Specifically, Defendant claimed that it could significantly negotiate down Plaintiff's bills and that she would pay a fraction of what she allegedly owed.

**ANSWER:     Defendant denies the allegations in Paragraph 26.**

27.     Defendant claimed that engaging its services would prevent long term damage to her credit profile.

**ANSWER:** **Defendant denies the allegations in Paragraph 27.**

28. Based on this solicitation, Plaintiff spoke with an agent of Defendant, and obtained additional information.

**ANSWER:** **Defendant denies the allegations in Paragraph 28 to the extent they rely on the allegations already denied in previous Paragraphs of this Complaint. Defendant admits that Plaintiff spoke with an agent of Defendant and obtained information about the services which Defendant does in fact provide, though Defendant denies that Plaintiff's characterization of such services is accurate.**

29. Defendant claims that it does not perform "debt settlement" but rather "debt validation" services in which it attempts to use technicalities to "invalidate" a debt and eliminate it from a consumer's credit report. However, Defendant does not have the ability to do this and there is no legal way to permanently and legally remove a valid and lawful debt without payment or negotiation with the creditor.

**ANSWER:** **Defendant admits that it provides debt validations services. Answering further, Defendant admits that it does not provide debt settlement services. Defendant denies the remaining allegations in Paragraph 29.**

30. After additional review of the documents and speaking with Defendant's representatives, Plaintiff was convinced that Defendant would be able to help her resolve her financial problems and agreed to hire Defendant.

**ANSWER:** **Defendant admits only that Plaintiff agreed to participate in Defendant's debt validation program under the program's terms. Defendant is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 30 and demands strict proof thereof.**

31.     Defendant is not licensed as a debt settlement provider, even though a license is required in Illinois pursuant to the DSCPA to perform debt settlement services.

**ANSWER:   Defendant admits it is not a licensed debt settlement provider as such a licensure if not required to provide debt validation services. The DSCPA is a legal instrument which speaks for itself. To the extent that this Paragraph alleges that Defendant is a debt settlement provider and therefore would require such licensure, these allegations are specifically denied.**

32.     After retaining Defendant's services, its agents told Plaintiff to stop paying her creditors and to no longer pay bills—even on lines of credit that were current.

**ANSWER:   Defendant admits that as part of its debt validation program it instructed Plaintiff to stop making payments for the enrolled debt. Defendant denies that it ever told Plaintiff to stop making payments on debts which were not enrolled in the debt validation program or to stop paying other bills with lines of credit that were current.**

33.     Defendant's agents additionally told Plaintiff to cease all communications with her creditors and to have all statements sent directly to Defendant's offices. This caused a further breakdown in relations between Plaintiff and her creditors.

**ANSWER:   Defendant admits that it told Plaintiff to cease all communications with creditors for the debt enrolled in the debt validation program and to have all statements for the enrolled debt sent directly to its offices. To the extent that Paragraph 33 alleges that Defendant told Plaintiff to do likewise for unenrolled debt, Defendant denies such allegations..**

9

34.     Plaintiff was concerned that failing to pay her bills would cause additional damage to her credit and cause litigation against her to collect alleged debts, and she reached out to Defendant.

**ANSWER:     Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 34 and demands strict proof thereof.**

35.     Defendant's agents told Plaintiff that her credit would only be decreased for a few months while Defendant's agents negotiated a settlement with her creditors, which, in turn, would cause her score to increase beyond where it had been before.

**ANSWER:     Defendant denies the allegations in Paragraph 35.**

36.     However, Defendant's claims and assertions were false, and the impact of Defendant's suggested course of action was catastrophic for Plaintiff.

**ANSWER:     Defendant denies the allegations in Paragraph 36.**

37.     Defendant's strategy only caused Plaintiff's financial situation to deteriorate further, as her creditworthiness was destroyed. She was forced to pay substantial amounts of money to Defendant even though Defendant did not provide the services as promised, and Plaintiff eventually faced litigation over alleged debts by at least one of her creditors.

**ANSWER:     Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 37 related to Plaintiff's overall financial situation and litigation involving at least one of her creditors. Defendant admits that Plaintiff paid Defendant for debt validation services, but denies the allegation that this about was "substantial"  and that Defendant did not provide the services promised.**

38.     Moreover, Defendant's actions violated Illinois law.  Specifically, § 429/145 of the DSCPA states in relevant part:

**Sec. 145. Prohibited practices. A debt settlement provider shall not do any of the following:**

**(2)       Advise or represent, expressly or by implication, that consumers should stop making payments to their creditors.**

**(3)       Advise or represent, expressly or by implication, that consumers should stop communicating with their creditors.**

**(8)       Advertise, display, distribute, broadcast, or televise services or permit services to be displayed, advertised, distributed, broadcasted, or televised, in any manner whatsoever, that contains any false, misleading, or deceptive statements or representations with regard to any matter, including services to be performed, the fees to be charged by the debt settlement provider, or the effect those services will have on a consumer's credit rating or on creditor collection efforts.**

**(13)      Misrepresent any material fact, make a material omission, or make a false promise directed to one or more consumers in connection with the solicitation, offering, contracting, or provision of debt settlement service.**

**(17)      Employ an unfair, unconscionable, or deceptive act or practice, including the knowing omission of any material information.**

**(18)      Engage in any practice that prohibits or limits the consumer or any creditor from communication directly with one another.**

**225 ILCS 429/145**

**ANSWER:       The DSCPA is a legal instrument which speaks for itself. Defendant denies the remaining allegations in Paragraph 38.**

39.       Defendant also took thousands of dollars in fees, an amount in excess of what is allowed under the DSCPA. The DSCPA allows a debt settlement company to collect a maximum of 15% of the total amount saved. 225 ILCS 429/1

**ANSWER:       The DSCPA is a legal instrument which speaks for itself. Defendant denies that the DSCPA is applicable to it because it does not engage in debt settlement activity and that its collection of fees was excessive.**

40. Defendant's "debt validation" efforts consisted solely of sending letters disputing the debt to Defendant and credit bureaus. However, these efforts were not effective, and would not be effective, as there is no legal requirement for credit bureaus or creditors to remove otherwise valid debts.

**ANSWER:** **Defendant admits that its debt validation efforts involve sending verification letters to collection agencies. Defendant denies the remaining allegations in Paragraph 40.**

41. Additionally, Defendant charged Plaintiff a "Validation Program Cost" of 50% of her "debt enrolled", costing her far in excess of the allowed fee cap under the DSCPA.

**ANSWER:** **Defendant admits that Plaintiff's Validation Program Cost totaled 50% of her debt enrolled. Defendant denies that the fee is excessive and that the DSCPA is applicable to it because Defendant does not engage in debt settlement activity as Plaintiff admits in Paragraph 40.**

42. Plaintiff has paid or been invoiced for fees in excess of 15% of the amount saved by Defendant even though this is in excess of what it could collect under the DSCPA.

**ANSWER:** **Defendant denies the allegations in Paragraph 42.**

43. Defendant violated the following provisions of the DSCPA:

**Sec. 125. Fees.**

**(c) A debt settlement provider may charge a settlement fee, which shall not exceed an amount greater than 15% of the savings. If the amount paid by the debt settlement provider to the creditor or negotiated by the debt settlement provider and paid by the consumer to the creditor pursuant to a settlement negotiated by the debt settlement provider on behalf of the consumer as full and complete satisfaction of the creditor's claim with regard to that debt is greater than the principal amount of the debt, then the debt settlement provider shall not be entitled to any settlement fee.**

**225 CS 429/125**

**ANSWER:** **The DSCPA is a legal instrument which speaks for itself. Defendant denies the allegations in Paragraph 43.**

44. However, Defendant sought to charge Plaintiff 50% of her total debt entered into the program, rather than simply the savings, as allowed by law. In this way, Defendant overcharged both as a percentage (15% vs. 50%) as well as basing it on a higher amount overall (by considering all debt "enrolled", not just the savings that Defendant could obtain).

**ANSWER:** **Defendant admits that Plaintiff's Validation Program Cost totaled 50% of her debt enrolled. Defendant denies that the fee is excessive and that the DSCPA is applicable to it because Defendant does not engage in debt settlement activity.**

45. As a result, Defendant violated 225 ILCS 429/125 of the DSCPA.

**ANSWER:** **Defendant denies the allegations in Paragraph 45.**

46. The DSCPA additionally requires certain pre-sale disclosures be made to consumers. Defendant failed to make these disclosures fully and accurately in violation of 225 ILCS 429/115. Specifically, Defendant failed to disclose to Plaintiff that:

    A. Using Defendant's services likely would harm Plaintiff's credit history and credit score (225 ILCS 429/115(a)(2));

    B. Using Defendant's service would not stop creditor collection activity, including creditor lawsuits ***and garnishments*** (225 ILCS 429/115(a)(3));

    C. Not all creditors will accept a reduction in the balance, interest rate, or fees a consumer owes (225 ILCS 429/115(a)(4));

    D. Plaintiff remained obligated to make periodic or scheduled payments to creditors while participating in Defendant's debt settlement plan, and that Defendant will not make any periodic or scheduled payments to creditors on behalf of Plaintiff (225 ILCS 429/115(a)(6));

    E. Plaintiff's failure to make periodic or scheduled payments to a creditor would likely: (A) harm her credit history, credit rating, or credit score; (B) lead the creditor to increase lawful collection activity, including litigation, garnishment of her wages, and judgment liens on her property; and (C) lead to the imposition

by the creditor of interest charges, late fees, and other penalty fees, increasing the principal amount of the debt (225 ILCS 429/115(a)(7));

F. The amount of time estimated to be necessary to achieve the represented results (225 ILCS 429/115(a)(8)); or

G. The estimated amount of money or the percentage of debt that Plaintiff must accumulate before a settlement offer will be made to each of her creditors.

**ANSWER:** **The DSCPA is a legal instrument which speaks for itself. Defendant denies the allegations in Paragraph 46, including subparts A – G.**

47. Defendant's actions caused Plaintiff to default on further obligations, resulting in her being sued by at least one of her creditors, causing additional financial damage. Defendant refused to assist Plaintiff in defending her in this matter as well.

**ANSWER:** **Defendant admits only that it is aware that Plaintiff was sued by at least one of her creditors. Defendant denies the remaining allegations in Paragraph 47 and demands strict proof thereof.**

48. After Plaintiff was sued, Defendant did nothing to represent her in the action and does not have attorneys employed to represent and provide legal services to consumers in the state of Illinois.

**ANSWER:** **Defendant admits only that it did not provide any legal representation to Plaintiff and that it does not employ any attorneys to represent and provide legal services to consumers in the state of Illinois. To the extent that Paragraph 48 alleges that Defendant provided no assistance to Plaintiff whatsoever, Defendant denies said allegations and states that it complied with the terms of the debt validation agreement.**

49. Plaintiff has been damaged as a result of Defendant's violations of the DSCPA, including but not limited to money spent in excess of what was allowed by law, loss of time, aggravation and inconvenience, and attorney's fees and court costs.

14

**ANSWER:** **Defendant denies the allegations in Paragraph 49.**

50. Under § 429/80 of☐the DSCPA, "[a]ny contract of debt settlement service as defined in this Act made by an unlicensed person shall be null and void and of no legal effect."

**ANSWER:** **The DSCPA is a legal instrument which speaks for itself. Defendant denies the allegations in Paragraph 50 as legal conclusions.**

51. Because Defendant is unlicensed and has been operating without a license in this state, the contract between Plaintiff and Defendant is an illegal contract, is void *ab initio*, and Defendant may not enforce any of its provisions whatsoever, including the arbitration clause, class action waiver, or choice-of-law provision.

**ANSWER:** **Defendant denies the allegations in Paragraph 51 as conclusions of law. Stating further, to the extent this Paragraph alleges that Defendant required a debt settlement license in order to operate its business in Illinois, Defendant denies said allegation as Defendant has never provided debt settlement services.**

52. While the contact between Plaintiff and Defendant contained an arbitration provision and class action waiver that sought to prohibit a class action and compel any dispute into private arbitration, this arbitration provision and class action wavier are void and unenforceable under the DSCPA.

**ANSWER:** **Defendant denies the allegations in Paragraph 51 as conclusions of law. Stating further, Defendant denies that the DSCPA is applicable to it because it does not engage in debt settlement activity.**

<u>**COUNT I**</u>
<u>**Violations of the Debt Settlement Consumer Protection Act and Illinois**</u>
<u>**Consumer Fraud Act**</u>

53.     Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

**ANSWER:     Defendant incorporates by reference as if fully set forth herein its answers to the allegations in the preceding paragraphs of this Complaint as though fully set out in response to Paragraph 53. Defendant further denies the allegations set out in the headline above Paragraph 53 to the extent they constitute an allegation.**

54.     This count is is [*sic*] brought on behalf of Plaintiff, individually and on behalf of all others similarly situated and against Defendant.

**ANSWER:     Paragraph 54 is a statement to which no response is required. To the extent a response is deemed to be required, all allegations as to the appropriateness of class treatment of this case in this Paragraph are denied.**

55.     The DSCPA states explicitly that violations of Section 105, 110, 115, 120, 125, 130, 135, 140, 145, or 150 of this Act constitutes an unlawful practice under the Consumer Fraud and Deceptive Business Practices Act.

**ANSWER:     The DSCPA is a legal instrument which speaks for itself. To the extent a response is deemed to be required, all allegations in Paragraph 55 are denied.**

56.     As set forth above, Defendant has violated at least sections 105, 115 – 125, and 135 – 150 of the DSCPA.

**ANSWER:     Defendant denies the allegations in Paragraph 56.**

16

56. By violating these provisions of the DSCPA, Defendant has also violated the Illinois Consumer Fraud Act.

**ANSWER:    Defendant denies the allegations in this second Paragraph numbered 56.**

57. As discussed in detail above, Defendant's conduct and violations of the DSCPA and ICFA have caused substantial damage to Plaintiff and members of the putative class.

**ANSWER:    Defendant denies the allegations in Paragraph 57.**

<u>**Count II**</u>
<u>**Credit Repair Organizations Act**</u>

58. Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

**ANSWER:    Defendant incorporates by reference as if fully set forth herein its answers to the allegations in the preceding paragraphs of this Complaint.**

59. Plaintiff brings this Count as an action for damages for Defendant's violations of the CROA, 15 U.S.C.A. § 1679 et seq.

**ANSWER:    Paragraph 59 is a statement to which no response is required. To the extent a response is deemed to be required, all allegations in this Paragraph directed to Defendant are denied.**

60. On September 30, 1996, the CROA became effective; it regulates the credit repair organizations industry, and among other things, prohibits "unfair or deceptive advertising and business practices by credit repair organizations." 15 U.S.C.A. § 1679b(a)(2).

**ANSWER:    Paragraph 60 is a statement to which no response is required. To the extent a response is deemed to be required, all allegations directed to Defendant in this Paragraph are denied.**

61. Under 15 U.S.C.A. § 1679a(3)(A), the CROA provides as follows:

17

**The term "credit repair organization" --**

**(A) means any person who uses any instrumentality of interstate commerce or the mails to sell, provide, or perform (or represent that such person can or will sell, provide, or perform) any service, in return for the payment of money or other valuable consideration, for the express or implied purpose of –**

> **(i) improving any consumer's credit record, credit history, or credit rating; or**

> **(ii) providing advice or assistance to any consumer with regard to any activity or service described in clause….**

**ANSWER:    The CROA is a legal instrument which speaks for itself. Defendant denies the remaining allegations in Paragraph 61 as legal conclusions.**

62.     The purposes of the CROA, according to Congress, are: (1) to ensure that prospective buyers of the services of credit repair organization are provide with the information necessary to make an informed decision regarding the purchase of such services; and (2) to protect the public from unfair or deceptive advertising and business practices by credit repair organizations. 15 U.S.C. § 1679(b).

**ANSWER:    The CROA is a legal instrument which speaks for itself. Defendant denies the remaining allegations in Paragraph 62 as legal conclusions.**

63.     Defendant, at all times relevant hereto, offered credit repair services in Illinois, in that Defendant, while acting as an intermediary between consumers and their creditors, advertised that Defendant could reduce the amount of debt due.

**ANSWER:    Defendant denies the allegations in Paragraph 63.**

64.     In the course of advertising, soliciting, offering for sale, and selling credit repair services to Illinois consumers, Defendant violated the CROA by, *inter alia*:

    A.     Failing to provide Plaintiffs with the disclosures required under the Act. 15 U.S.C.A. § 1679c and 1679d;

    B.     Failing to provide Plaintiffs with a proper notice of cancellation. 15 U.S.C.A. § 1679d and 1679e;

    C.     Charging Plaintiff money or other valuable consideration for its services prior to fully performing the same. 15 U.S.C.A. § 1679b(b); and,

    D.     Making untrue or misleading representations regarding its credit repair services. 15 U.S.C.A. § 1679b(a)(3).

**ANSWER:** **The CROA is a legal instrument which speaks for itself. Defendant denies the remaining allegations in Paragraph 64 as legal conclusions.**

65.    15 U.S.C.A. § 1679g(a)(3) states:

**(a)    Liability established**

**Any person who fails to comply with any provision of this subchapter with respect to any other person shall be liable to such person in an amount equal to the sum of the amounts determined under each of the following paragraphs:**

**(3) Attorneys' fees**

**In the case of any successful action to enforce any liability under paragraph (1) or (2), the costs of the action, together with reasonable attorneys' fees.**

**ANSWER:** **The CROA is a legal instrument which speaks for itself. Defendant denies the remaining allegations in Paragraph 65 as legal conclusions.**

66.    Defendant further violated the CROA by engaging, directly or indirectly, in acts, practices, or a course of business designed to defraud and deceive Plaintiff regarding Defendant's credit repair services. 15 U.S.C.A. § 1679a.

**ANSWER:** **Defendant denies the allegations in Paragraph 66.**

67.     As a result of Defendant's conduct and its violations of the CROA, Plaintiff has been damaged.

**ANSWER:      Defendant denies the allegations in Paragraph 67.**

68.     Plaintiff has suffered credit harm, mental anguish, emotional distress, aggravation, and humiliation as a result of Defendant's conduct.

**ANSWER:     Defendant denies the allegations in Paragraph 68.**

## CLASS ALLEGATIONS

69.     Plaintiff brings this claim on behalf of a class. The class consists of:

**(a) all individuals with Illinois addresses; (b) who entered into a debt settlement agreement with Defendant; (c) and paid Defendant for debt settlement services; (d) within the past 3 years.**

**ANSWER:     Paragraph 69 is a statement to which no response is required. To the extent a response is deemed to be required, Defendant denies all allegations in this Paragraph  and that class treatment is appropriate.**

70.     Plaintiff may alter the class definition to conform to developments in the case and discovery.

**ANSWER:     Paragraph 70 is a statement to which no response is required. To the extent a response is deemed to be required, Denies all allegations in this Paragraph and that class treatment is appropriate.**

71.     The proposed class meets all requirements under 735 ILCS 5/2-801.

**ANSWER:     Defendant denies the allegations in Paragraph 71.**

72.     **Numerosity**: Upon information and belief, the Class is so numerous that joinder of all individual plaintiffs would be impracticable. The exact number of class members is presently

unknown to Plaintiff and can only be ascertained through discovery because that information is exclusively in the possession of Defendant. However, it is reasonable to infer that more than 40 Illinois consumers are members of the class. Class members can be easily identified through Defendant's records or by other means. Class members may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include U.S. mail, electronic mail, Internet postings, and/or published notice.

**ANSWER:** **Defendant denies the allegations in Paragraph 72.**

73. **Commonality and Predominance:** This action involves common questions of law and fact, which predominate over any questions affecting individual class members, including, without limitation:

A.      Whether the Defendant charged unlawful fees to Plaintiff and members of the putative class;

B.      Whether the Defendant violated the DSCPA;

C.      Whether the Defendant violated the ICFA;

D.      Whether Defendant violated the CROA;

E.      Whether the Defendant made statements prohibited by law or that were otherwise false, inaccurate or deceptive;

F.      Whether the Defendant advertised, displayed, distributed, broadcast, or televised services or permitted services to be displayed, advertised, distributed, broadcasted, or televised, in any manner whatsoever, that contains any false, misleading, or deceptive statements or representations with regard to any matter, including services to be performed, the fees to be charged by the debt settlement provider, or the effect those services will have on a consumer's credit rating or on creditor collection efforts;

G.      Whether the Defendant misrepresented any material fact, made a material omission, or made a false promise directed to one or more consumers in connection with the solicitation, offering, contracting, or provision of debt settlement service;

> H.    Whether the Defendant employed an unfair, unconscionable, or deceptive act or practice, including the knowing omission of any material information;
>
> I.    Whether the Defendant is subject to the DSCPA, ICFA and CROA;
>
> J.    Whether Plaintiff and the Class are entitled to relief.

**ANSWER:    Defendant denies the allegations in Paragraph 73 including subparts A – J.**

74.    **Adequacy of Representation:** Plaintiff is an adequate representative of the Class because their interests do not conflict with the interests of the class members they seek to represent, and Plaintiff intends to prosecute this action vigorously. Plaintiff has retained counsel competent and experienced in class action litigation. The interests of the Class will be fairly and adequately protected by Plaintiff and Plaintiff's counsel and Plaintiff's claim is typical of the claims of the class members.

**ANSWER:    Defendant denies the allegations in Paragraph 74.**

75.    **Superiority:** A class action in this case would be superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. The damages or other financial detriment suffered by Plaintiff and the class members are relatively small compared to the burden and expense that would be required to individually litigate their claims against Defendant, so it would be impracticable for class members to individually seek redress for Defendant's wrongful conduct. Individualized litigation creates a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and the judicial system.  By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

**ANSWER:    Defendant denies the allegations in Paragraph 75.**

WHEREFORE, Defendant Panamerican Consulting, LLC prays that this honorable Court dismiss the case with prejudice based in the foregoing denials to the allegations in Plaintiff's Complaint.

### First Defense
### (Failure to State a Claim)

Plaintiff's Complaint fails to set forth facts sufficient to state a claim upon which relief may be granted against Defendant as Defendant does not engage in debt settlement activity and Plaintiff further fails to state facts sufficient to entitle Plaintiff to the relief sought, or to any other relief whatsoever from this Defendant.

### Second Defense
### (Failure to Mitigate Damages)

Plaintiff has failed to mitigate her damages.

### Third Defense
### (Contributory and Comparative Fault)

Any alleged damages sustained by Plaintiff were, at least in part, caused by the actions of Plaintiff herself or third parties and resulted from Plaintiff's or the third parties' own negligence which equaled or exceeded any alleged negligence or wrongdoing by Defendant.

### Fourth Defense
### (Compliance with Legal Requirements)

Defendant maintains and follows extensive policies and procedures to ensure compliance with all applicable statutory, regulatory, and common law requirements, and accordingly, Plaintiff's claims are barred by this Defendant's compliance with all applicable State, Federal, and local laws and regulations.

**Fifth Defense**
**(Estoppel)**

Any damages which Plaintiff may have suffered, which Defendant continues to deny, were the direct and proximate result of the conduct of Plaintiff. Therefore, Plaintiff is estopped and barred from recovery of any damages.

**Sixth Defense**
**(Statute of Limitations)**

Plaintiff's Complaint fails to the extent that it is barred by the applicable statute of limitations.

**Seventh Defense**
**(Arbitration)**

Plaintiff has agreed to arbitrate this dispute in the original agreement creating her relationship with Defendant. This Complaint violates that agreement, and this matter should be dismissed and/or stayed pending arbitration.

**Eighth Defense**
**(Standing)**

The Complaint is barred, in whole or in part, to the extent Plaintiff lacks standing under the ICFA, DSCPA, and CROA, or any of them.

**Ninth Affirmative Defense**
**(Right to Additional Defenses)**

Defendant reserves the right to assert additional affirmative defenses at such time and to such extent as warranted by discovery and the factual developments in this case.

Dated this 28th  Day of December 2023.          Respectfully submitted,

Sean G. Rohan, Esq., #6310029
Russell J. Brown, Esq. #6323683
O'HAGAN MEYER. LLC
1 East Wacker Drive, Suite 3400          By:
Chicago, Illinois 60601
(312) 422.6100 (Telephone)               Sean G. Rohan, Esq. # 6310029
(312) 422.6110 (Facsimile)               ATTORNEY FOR DEFENDANT
srohan@ohaganmeyer.com
rbrown@ohaganmeyer.com

24

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on December 28, 2023, he filed the foregoing with the Clerk of the Court of the United States District Court for the Northern District of Illinois, Eastern Division, and all counsel of record who are deemed to have consented to electronic service are being served a true and correct copy of the foregoing document using the Court's CM/ECF system:

Bryan Paul Thompson
Robert W. Harrer
CHICAGO CONSUMER LAW CENTER, P.C.
650 Warrenville Road, Suite 100
Lisle, IL 60532
bryan.thompson@cclc-law.com
rob.harrer@cclc-law.com

Seth Mcormick
GREAT LAKES CONSUMER LAE FIRM, LLC
73 W. Monroe St., Suite 100
Chicago, IL 60603
seth@glclf.com

***ATTORNEYS FOR PLAINTIFF***

_____*/s/ Sean G. Rohan*_____
Sean G. Rohan, Esq. # 6310029
1 East Wacker Drive, Suite 3400
Chicago, Illinois 60601
(312) 422.6100 (Telephone)
(312) 422.6110 (Facsimile)
srohan@ohaganmeyer.com