UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MELANIE RADY, individually and on behalf of all others similarly situated<br><br>Plaintiff,<br><br>v.<br><br>PANAMERICAN CONSULTING, LLC,<br><br>Defendant. | No. 23 CV 15170<br><br>Judge Georgia N. Alexakis |

ORDER

Plaintiff Melanie Rady, on behalf of herself and a putative class, sued defendant Panamerican Consulting, LLC ("Panamerican") for violating several Illinois and federal consumer financial laws. Panamerican moves to compel arbitration and stay the proceedings under an arbitration agreement signed by Rady. For the reasons stated below, the motion is granted.

I.   Background

The parties agree on the relevant factual issues. After speaking to a Panamerican employee, Rady hired Panamerican to provide debt-related services. [17] ¶ 30. The parties dispute whether Panamerican represented that these services would be debt-settlement services or debt-validation services and which type of service it actually provided. *Id.* ¶¶ 25–29.

Rady was dissatisfied with the services Panamerican provided, and Rady sued in Illinois state court, claiming that Panamerican had violated the Illinois Debt Settlement Consumer Protection Act, 225 ILCS 419 *et seq.*, the Illinois Consumer Fraud and Deceptive Practices Act, 815 ILCS 505/2, and the federal Credit Repair Organizations Act, 15 U.S.C. §1679 et seq. [1-1] ¶¶ 3–8. Panamerican in turn removed the case to federal court. [1].

The parties agree that as part of her enrollment with Panamerican, Rady signed an arbitration agreement. The parties also agree on the relevant provision of that arbitration agreement:

> In the event of any controversy, claim or dispute between the parties arising out of or relating to this agreement or the breach, termination,

enforcement, interpretation, conscionability or validity thereof, including any determination of the scope or applicability of this agreement to arbitrate, shall be determined by arbitration in Orange County, California or in the county in which the consumer resides, in accordance with the Laws of the State of California for agreements to be made in and to be performed in California. The parties agree that the arbitration shall be administered by the American Arbitration Association ("AAA'") pursuant to its rules and procedures and an arbitrator shall be selected by the AAA.

[24-1] at 8; [32] at 2.

Rady contends the arbitration agreement is void under state law, [32] at 2, and pursuant to the above-cited language in the arbitration agreement, the parties agree that this "gateway issue" is for an arbitrator, not this Court, to decide. [24] ¶ 10; [32] at 4.

The only disagreement between the parties is regarding the scope of the arbitration at this phase of the proceedings. Rady argues that at this phase, the arbitration should be limited to the gateway issue of whether the overall agreement between her and Panamerican is void under state law. [32] at 4–5. For its part, Panamerican contends that Rady is attempting to impose an "extra contractual" and "arbitrar[y] limit" to the arbitration agreement. [33] at 1–2.

II.   Analysis

A motion to compel arbitration should be granted when there is "(1) an agreement to arbitrate, (2) a dispute within the scope of the arbitration agreement, and (3) a refusal by the opposing party to proceed to arbitration." *Druco Restaurants, Inc. v. Steak N Shake Enters., Inc.*, 765 F.3d 776, 781 (7th Cir. 2014) (citation omitted). All three factors are present here.

In the arbitration context, the Supreme Court has repeatedly noted that there exist "certain gateway matters, such as whether the parties have a valid arbitration agreement at all." *Green Tree Fin. Corp. v. Bazzle*, 539 U.S. 444, 452 (2003). The validity of the agreement is in dispute here, and typically, "the arbitrator cannot resolve any issues until the court has ascertained that there is an actual agreement," *see K.F.C. v. Snap Inc.*, 29 F.4th 835, 837 (7th Cir. 2022). But parties can agree to submit such "gateway issues" to arbitration as well. *See Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 68–69 (2010). As the Supreme Court has explained, "[a]n agreement to arbitrate a gateway issue is simply an additional, antecedent agreement the party seeking arbitration asks the federal court to enforce, and the [Federal Arbitration Act] operates on this additional arbitration agreement just as it does on any other." *Id.* at 70. That is what happened here. The parties agreed that an

2

arbitrator could determine the "conscionability or validity" of their arbitration agreement. *See, e.g.*, [24-1] at 8.

Because the validity of the agreement under Illinois law is a gateway issue, the Court fully expects that the arbitrator would resolve that question at the outset. Practically speaking, it would make no sense for the arbitrator to decide the merits of the parties' dispute before first determining whether a valid arbitration agreement even gives the arbitrator the authority to do so. Indeed, *Rent-A-Center* appears to prescribe this sequence of events. It refers to the "agreement to arbitrate a gateway issue" as an "antecedent agreement." 561 U.S. at 70.

If the arbitrator decides the gateway issue in Panamerican's favor—i.e., the arbitrator determines that the agreement is valid—Rady recognizes that "she will proceed individually in arbitration." [32] at 5. And if the arbitrator decides the gateway issue in Rady's favor—i.e., the arbitrator determines the agreement is invalid—then the parties, naturally, will return to this Court and seek to lift the stay on federal proceedings. Panamerican has said nothing in its briefs to suggest that the events would unfold differently, and Rady has given this Court no reason to worry that the arbitrator would declare the agreement invalid but insist on resolving the merits of the parties' dispute anyway.

Nonetheless, Rady appears to want the Court to grant Panamerican's motion only to a limited extent and permit the arbitrator to decide only the gateway issue. But Rady does not indicate what in the language of the parties' agreement or in relevant caselaw gives the Court the power to cabin the arbitrator's authority in this way. Nor, in the scenario in which the arbitrator upholds the agreement's validity, does Rady articulate what she envisions needing to occur in federal court before the arbitrator could move on to the merits. In other words, both from a legal and a pragmatic standpoint, Rady has not staked out a coherent basis to oppose Panamerican's motion.

To the extent Rady is concerned that she is waiving something by arbitrating the gateway issue, [32] at 5, it is difficult to see how that would be the case. *See Opals on Ice Lingerie v. Bodylines Inc.*, 320 F.3d 362, 369 (2d Cir. 2003) ("[T]o the extent that Bodylines participated in the arbitration hearings in order to resolve the question of arbitrability itself, such participation does not constitute waiver."). Rady has made known her position that the agreement is invalid. She has done so before the arbitration has begun. And, indeed, Rady is now being compelled to arbitration by the Court. This case is therefore substantially distinguished from the cases Rady cites where courts did find waiver. *See, e.g.*, *United Indus. Workers, v. Gov't of Virgin Islands*, 987 F.2d 162, 169 (3d Cir. 1993) (challenge to arbitrator's jurisdiction waived when party participated in arbitration without voicing objection).

3

## CONCLUSION

For the foregoing reasons, Panamerican's motion to stay proceedings and compel arbitration is granted. [26]. All further proceedings in this case are stayed pending the outcome of the arbitration. The parties are directed to submit a joint status report on or before 4/14/25 apprising the Court of the status of the arbitration.

_____
Georgia N. Alexakis
United States District Judge

Date: 1/14/25